IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | Criminal No. 3:16-cr-70 |
| v. | ) | |
| | ) | **GOVERNMENT'S SENTENCING** |
| AMERICA YEGILE HAILESELASSIE | ) | **MEMORANDUM** |
| | ) | |
| Defendant. | ) | |
| | ) | |

COMES NOW the United States of America, by its undersigned counsel, and provides the following memorandum for the sentencing in this matter.

## TABLE OF CONTENTS

I. BACKGROUND................................................................................................................2

II. SENTENCING CALCULATION ...................................................................................2

A.    **Statutory Maximum Sentence** ..............................................................................2
B.    **Sentencing Guidelines Calculation** .....................................................................2
C.    **The four-level enhancement for the offense resulting in substantial disruption of public, governmental, or business functions or services, pursuant to USSG §2A6.1(b)(4)(A), is applicable** ...............................................................................3
D.    **A two-level enhancement for Obstruction of Justice, pursuant to USSG §3C1.1, is applicable** .............................................................................................................5

III. GOVERNMENT'S RECOMMENDATION....................................................................8

1

## I.     BACKROUND

On October 20, 2017, Haileselassie pled guilty before the district court to interstate communication of a threat, in violation of Title 18, United States Code, § 875(c).  (District Court Docket, hereinafter "DCD," 92 (hereinafter "PSR") ¶¶ 1-3.) On December 29, 2017, the government filed objections to the PSR. (DCD 86.) Haileselassie objected to the four-level enhancement for the offense resulting in substantial disruption of public, governmental, or business functions or services, pursuant to USSG §2A6.1(b)(4)(A); the two-level enhancement for obstruction of justice, pursuant to USSG §3C1.1; not receiving acceptance of responsibility, pursuant to USSG §3E1.1; and the committing the offense while on probation. (DCD ¶¶ 89 and 94.)

Pursuant to the plea agreement, both parties recommend that a three-level reduction for acceptance of responsibility should be applied and that Haileselassie did not commit the offense while serving a term of probation.  The government plans to call three witnesses at sentencing to support the substantial disruption enhancement and an upward variance.

## II.     SENTENCING CALCULATION

### A.     Statutory Maximum Sentence

Count Two carries a maximum term of imprisonment of 5 years of imprisonment.

### B.     Sentencing Guidelines Calculation

The advisory guideline range is calculated in PSR ¶¶ 33-42 as follows:

USSG §2A6.1(a)(1) (base offense level):                    12

USSG §2A6.1(b)(4)(A) (substantial disruption):            +4

USSG §3C1.1 (obstruction of justice)                      +2

2

Total Offense Level:                                                    18

Level 18/Criminal History VI: 57-60 months' imprisonment.

The Government recommends the guidelines be calculated as follows:

USSG §2A6.1(a)(1) (base offense level):                                 12

USSG §2A6.1(b)(4)(A) (substantial disruption):                         +4

USSG §3C1.1 (obstruction of justice)                                   +2

USSG §3E1.1 (acceptance of responsibility)                            -3

Total Offense Level:                                                   15

Level 15/Criminal History V: 37-46 months' imprisonment.

C.    **The four-level enhancement for the offense resulting in substantial disruption of public, governmental, or business functions or services, pursuant to USSG §2A6.1(b)(4)(A), is applicable**

USSG §2A6.1(b)(4)(A) states, "[i]f the offense resulted in . . . [a] substantial disruption of public, government, or business functions or services . . . increase by [four] levels."  The Eighth Circuit has not addressed the meaning of "substantial disruption," under §2A6.1(b)(4)(A) or applied this enhancement to a given set of facts.  Other circuits have reviewed the scope of this enhancement by an examination of the plain meaning of "substantial disruption." The Eleventh Circuit considered the dictionary meaning of these terms that defined "substantial" as "of ample or considerable amount, quantity, size, etc." *See*, *United States v. Dudley*, 463 F.3d 1221, 1226 (11th Cir. 2006) (using the Random House Dictionary definition). The term "disruption" was defined as "forcible separation or division into parts," "a disrupted condition" or "to cause disorder or turmoil in." *Id.*  Other circuits have applied this enhancement on a case-by-case basis. *See also*, *United States v. Anwar*, 741 F.3d 1134, 1139-41 (10th Cir. 2013)

(affirming application of this enhancement to a bomb threat resulting in the evacuation of a building and classes, and school employees and emergency personnel suspended regular duties to respond to threat); *Dudley*, at 801-02 (finding substantial disruption when half the floor of courthouse was closed, the official business of the courthouse was interrupted, and significant time was spent by emergency and security personnel that responded to the threat); *United States v. Sanders*, 511 Fed.Appx. 463, No. 11-2314, 2013 WL 132738 at *3 (6th Cir., January 10, 2013) (determining substantial disruption occurred when multiple Coast Guard personnel conducted an air and land search in response to prank distress call); and *United States v. Snipes*, 466 Fed.Appx. 800, No. 11-10679, 2012 WL 1003643 (11th Cir., March 27, 2012) (finding substantial disruption when several Florida National Guard officers, personnel and soldiers in response to a threat, had to interrupt daily business, movement of soldiers for extra security checkpoints, delayed individuals entering the facility, and law enforcement officers diverted from their duties).

The immediacy and danger conveyed by two threats in two days required personnel from the Scott County Sheriff's Office and Scott Community College to disrupt what they were doing, and spend considerable time looking for a potential bomb.  On November 2, 2015, the threat stated, "There is a bomb in the building. I will blow it up at noon today 11/2/2015."  On November 4, 2015, the second threat stated, "There is a bomb at Scott Community College. It will explode at noon today." The successive nature and content of these threats makes readily apparent that disruption was in fact Haileselassie's goal.

In response to the initial bomb threat on November 2, 2015, the Scott County Sheriff's Office was called and conducted an investigation.  The Sheriff's Office then requested that a

member of the Quad City Bomb Squad respond.  The Sheriff's Office, along with school administrators and security personnel, were involved in searching the inside and outside of the buildings.   While classes were occurring, the bomb squad had a bomb-sniffing dog walk around the campus.  Just two days later, on November 4, 2015, a second bomb threat was sent by Haileselassie.  The Scott County Sheriff's Office and school personnel coordinated efforts with other Scott Community College staff to search the building for a potential bomb.

After the first November 2, 2015, bomb threat, the IT personnel spent considerable time investigation and taking counter measures to prevent another unauthorized access. After the second bomb threat on November 4, 2015, IT personnel manually changing the IP address for all the printers.  Following the November 11, 2015, pornographic image print job, it was revealed that changing the IP addresses was not sufficient and further time and resources was utilized to investigate how the threat over their network occurred. This investigation determined that on October 28, 2015, Haileselassie had accessed a Scott Community College computer and enabled the capability to remotely print to the college computer via Google Chrome.

## D.   A two-level enhancement for Obstruction of Justice, pursuant to USSG §3C1.1, is applicable.

USSG §3C1.1 states, in part, "[i]f the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction . . . increase by [two] levels."   Application note two under USSG §3C1.1 provides, in part, "[a] defendant's denial of guilt (other than a denial of guilt under oath that constitutes perjury), refusal to admit guilt . . . refusal to enter a plea of guilty is not a basis for application of this provision."   USSG §3C1.1, comment. (n.4) provides a "non-exhaustive" list of examples of the types of conduct to which

5

this adjustment applies.  One of those examples is "providing materially false information to a law enforcement officer that significantly obstructed or impeded the official investigation or prosecution of the instant offense."  "Material" is defined as "evidence, fact, statement, or information that, if believed, would tend to influence or affect the issue under determination." USSG §3C1.1. comment. (n.6).

In this case, the facts show that Haileselassie repeatedly obstructed justice and impeded the investigation and prosecution of the instant offense in multiple ways. From the time of his initial arrest until September 2017, Haileselassie sent at least 17 handwritten letters to government parties, witnesses, and victims including the Bettendorf Police Department, Davenport Police Department, Scott County Sheriff's Office, and the United States Attorney's Office.  The government later learned from the presentence report that Haileselassie also wrote at least 11 letters to the United States Probation Office.  In the letters to law enforcement and the United States Attorney's Office, Haileselassie repeatedly claimed that he was "being framed for something I did not do."  He asserted that "Ms. Kunde had lied to the Grand Jury on several occasions[s]" and that he lost his flash drive with all of his passwords.  He also provided several different false factual scenarios as potential defenses that the United States Attorney's Office and/or law enforcement "should explore."

On May 18, 2017, and June 30, 2017, while at the Muscatine County Jail after being federally charged, arrested, and detained, Haileselassie contacted Quad Cities Crime Stoppers and advised that a "male by the name of America . . . was arrested for the bomb threats and the charge is still pending in court."  That caller purported to be a student at Black Hawk College and a classmate of Haileselassie's.  The caller stated that a couple weeks before the threats,

Haileselassie told the caller he had lost his briefcase containing his spiral notebook. Haileselassie's flash drive was taped to the notebook.  The caller claimed to witness a subject named "Gabriel" send the bomb threat to Scott Community College.  On June 30, 2017, the Crime Stoppers tip line received an anonymous call in which the person stated they were on a deaf chat site and Gabriel Stropes stated he had called in a bomb threat to Scott Community College in November 2015 and got away with it.  Further investigation conducted by law enforcement revealed that Haileselassie knew Stropes, previously harassed him, and falsely accused him of making the bomb threats.

The Fourth Circuit has held that a defendant who not only denied guilt but falsely implicated others in a scheme to defraud the IRS cannot avail himself of the denial of guilt exception.  *United States v. Gormley*, 201 F.3d 290, 294 (4th Cir. 2000).  Cf. *United States v. Surasky*, 976 F.2d 242, 245 n.2 (5th Cir. 1992) (noting that, if a defendant "were to so say 'John Smith did it, not me,' when in fact John Smith was not involved, such a statement . . . would be more than a simple denial of guilty and could be treated as obstruction of justice").  The Eighth Circuit has similarly found that providing exculpatory explanations and implicating another person supported the obstruction of justice enhancement.  *United States v. John H. Sitting Bear*, 436 F.3d 929, 933-34 (2006) (stating that "[a]lthough Sitting Bear had no obligation to tell investigators anything, once he chose to talk, he had an obligation to be truthful. Sitting Bear's exculpatory explanations and attempts to point the finger at his codefendant without providing the full picture of his own actions support the district court's application of the obstruction of justice enhancement.") *See also, United States v. Baker,* 200 F.3d 558, 562 (8th Cir. 2000) (holding that statements to the investigator that provided an exculpatory version of events and caused the

investigator to conduct further analysis of financial transactions was more than a mere denial of guilt and supported an obstruction enhancement).

The evidence will show that as a result of Haileselassie's letters, false defenses, and false accusations in the Crime Stopper tips, significant law enforcement resources and time were spent following up with witnesses, including interviewing Gabriel Stropes and his mother, obtaining additional records and other information.  Haileselassie significantly obstructed and impeded the investigation and prosecution of this offense.  Therefore, the obstruction of justice enhancement, pursuant to USSG §3C1.1, should be applied.

## III.   GOVERNMENT'S RECOMMENDATION

After consideration of the advisory guideline range and the factors under 18 U.S.C. § 3553(a), specifically the nature and circumstances of the offense, the history and characteristics of the defendant, and the need for the sentence to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence to criminal conduct, and protect the public from further crimes of the defendant, the government will request a sentence of 60 months of imprisonment.

The instant offense is Haileselassie's third federal conviction.  He is a repeat and habitual offender.  Prior to the instant offense, Haileselassie had already been sentenced to a total of 99 months of federal incarceration for making false threats and not complying with supervision. (PSR ¶¶ 63 and 64.)   In 2004, he was federally convicted and sentenced to 33 months of imprisonment for making several threats to blow up trains and stations in rail system, and to kill many passengers.  (PSR ¶ 63.)   His supervised release was later revoked on two occasions and he was ordered to serve an additional 31 months of imprisonment.  *Id.*   While on supervised

release, Haileselassie committed his second federal offense and mailed a threatening letter to a

law enforcement officer with powder.  (PSR ¶ 64.)   In the letter directed to a Bettendorf Police

Detective he did not like, Haileselassie claimed the powder was anthrax and that "You are Dead

MeaT I will you all . . . ."  Haileselassie was sentenced before Your Honor and sentenced to 21

months of imprisonment; however, his supervised release was later revoked and he was ordered

to serve 14 months of additional imprisonment.  *Id.*  Haileselassie's prior imprisonment in the

Bureau of Prisons did nothing to deter his criminal behavior.

Haileselassie's criminal history spans over 20 years and is littered with instances of

harassment, threats of harm, and false reports.  He has at least 15 convictions for this same type

of behavior that did not receive any criminal history points.  Specifically, he falsely reported an

armed robbery; repeatedly called 911 for no real emergency; harassed police officers by

attempting to have long-distance charges placed on a phone number belonging to Bettendorf

Police Department; reported that he planned to bomb a plane; called an 80-year-old recent

widowed woman and stated "I'm coming to kill you"; and purported to be his mother and

reported to Bettendorf Police Department that someone incurred over $18,000 in credit card

debts." (PSR ¶¶ 47, 51, 53-55, 56, 57, 61, 62, and 71.)  More concerning, in April 2015,

Haileselassie sent text messages to co-worker pretending to be her boyfriend's ex-girlfriend.

(PSR ¶ 73.)  In those text messages, Haileselassie threatened to "choke [her] to death" and

requested to meet for a physical confrontation.  *Id.*   In addition to the threatening texts,

Haileselassie also texted a pornographic image. *Id.*  Furthermore, during the investigation of the

instant offense, it was learned that Haileselassie previously harassed another individual, Gabriel

Stropes.  (PSR ¶ 27.)  Stropes's mother felt that because of her son's autism, he was an easy

target for harassment.  *Id.*  Haileselassie created a false Facebook profile of Stropes and filed a complaint against Stropes alleging Stropes sexually harassed a staff member of the college.  *Id.*

Given Haileselassie's prior federal incarceration sentences, the circumstances of the instant offense including where he falsely implicated another person, and his repeated criminal conduct, the government believes a sentence of 60 months of imprisonment is sufficient, but not greater than necessary, and takes into account all of the aggravating and mitigating factors in this offense as well as the factors set forth in 18 U.S.C. § 3553(a).

WHEREFORE, the government prays that the district court considers this sentencing memorandum in determining the final sentence of the defendant.

Respectfully Submitted,

Marc Krickbaum
United States Attorney

By:   */s/ Richard D. Westphal*
   Richard D. Westphal
   Assistant United States Attorney
   U.S. Courthouse, Suite 310
   131 East Fourth Street
   Davenport, Iowa 52801
   Tel: (563) 449-5432
   Fax: (563) 449-5433
   Email: rich.westphal@usdoj.gov

CERTIFICATE OF SERVICE

I hereby certify that on February 8, 2018, I
electronically filed the foregoing with the
Clerk of Court using the CM ECF system.  I hereby
certify that a copy of this document was served
on the parties or attorneys of record by:


____U.S. Mail _____ Fax _____Hand Delivery


___X_____ ECF/Electronic filing    ____Other means

UNITED STATES ATTORNEY

By: */s/ Richard D. Westphal*_____
        Richard D. Westphal
        United States Attorney□s Office

11